**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| WILLIAM ORTIZ, | : |
| Petitioner, | : Civil No. 10-4174 (RMB) |
| v. | : |
| DONNA ZICKEFOOSE, | : OPINION |
| Respondent. | : |

**APPEARANCES:**

Petitioner Pro Se:              Counsel for Respondent:
William Ortiz                   Paul A. Blaine
F.C.I. Fort Dix                 Office of the U.S. Attorney
P.O. Box 2000                   401 Market Street
Fort Dix, New Jersey 08640      4th Floor
                                Camden, N.J. 08101

**BUMB**, District Judge

William Ortiz filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking expungement of his record and restoration of 40 days of good conduct time, which had been disallowed as a disciplinary sanction for committing the prohibited act of Possessing a Hazardous Tool (Code 108). Copies of the Bureau of Prisons' ("BOP") List of Prohibited Acts; BOP Proposed Rule Changes; Respondent's Answer in 10-251 (RBK) Hudson v. Zickefoose; an affidavit from Petitioner regarding the handbook; Petitioner's Appeal to the Central Office; and the Disciplinary Hearing Officer's Report are all attached to the Petition. For the

reasons expressed below, the Court will deny the Petition with prejudice.

## I. BACKGROUND

Petitioner challenges the loss of 40 days of earned good conduct time imposed by the BOP as a disciplinary sanction for committing the prohibited act of Possessing a Hazardous Tool (Code 108).[1]  Petitioner argues: (1) the BOP violated the Due Process Clause by increasing the severity of the sanctions for possession of a Bluetooth cellular device without adequate notice; (2) the BOP's failure to abide by the Administrative Procedure Act (APA) when changing the rule regarding possession of a cell phone renders the rule unenforceable; (3) the rule prohibiting cell phones is void for vagueness; and (4) Petitioner has been treated differently than other similarly situated prisoners, which violates the Equal Protection Clause.

On August 28, 2009, Petitioner, who was an inmate at FCI McKean in Bradford, Pennsylvania at the time, was charged with Possession of a Hazardous Tool, Code 108, and Lying, Code 313.

---

[1] To the extent that Petitioner challenges the sanctions placing him in disciplinary segregation for 30 days, visiting restrictions for one year, and the recommendation for a disciplinary transfer, these claims are not cognizable under 28 U.S.C. § 2241 because they do not affect the fact or duration of Petitioner's confinement.  See Ganim v. Fed. Bureau of Prisons, 235 Fed. Appx. 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed. Appx. 551 (3d Cir. 2002); Woodall v. Fed. Bureau of Prisons, 432 F. 3d 235, 242 n.5 (3d Cir. 2005).  Alternatively, while the Due Process Clause protects against the revocation of good conduct time, it does not protect against the imposition of the other sanctions.  See Sandin v. Conner, 515 U.S. 472 (1995); Torres v. Fauver, 292 F. 3d 141, 150-51 (3d Cir. 2002).

(Resp.'s Br. Ex. 4.)  According to the incident report regarding the event:

> On the above date inmate ORTIZ #10731-055 was instructed to get out of bed and leave his assigned living quarters (E04-111) so a random search could be conducted. A Blue Tooth cell phone device was found under the desk. A pair of black Timberland boots were found under the bed. ORTIZ stated "I brought the boots from my last spot." A check of ORTIZ's property form in his central file showed no black boots but the property forms in ORTIZ's possession showed one pair of black boots. Inmate ORTIZ then stated "I found them, somebody left them here."

(Id. at § 11.)  On August 31, 2009, the initial hearing was held before the Unit Discipline Committee ("UDC").  (Id. at § 21.) At the UDC hearing, Ortiz stated, "My bunkie has nothing to do with it. I take responsibility for the Blue Tooth.  I told Chappel [the reporting officer] the boots were mine." (Id.  at § 17.) At the conclusion of the hearing, the UDC referred the incident report to the Discipline Hearing Officer ("DHO") for disposition.  (Id. at § 20.)

On September 3, 2009, the DHO conducted a hearing.  (Resp.'s Ex. 5, § I(B).)   At the hearing, Ortiz admitted the Blue Tooth device was his and that his cell-mate had nothing to do with it.  (Id. at § III(B).)  He stated he felt he was being charged with the wrong code.  (Id.)  He stated he did not have a cell phone, and should be charged with a Code 305 violation, not a Code 108.  (Id.) He also admitted he lied to the Officer about his boots.  (Id.) The DHO found that Petitioner was guilty of committing the two offenses and imposed several sanctions: 30 days in disciplinary

segregation; visiting restrictions for one year; a recommended disciplinary transfer; disallowance of 40 days good conduct time for Code 108; disallowance of 13 days good conduct time for Code 313. (Id. at § VI.)  On November 3, 2009, Petitioner was transferred to FCI Fort Dix. (Resp.'s Ex. 3 at 1.)

On or about November 27, 2009, Ortiz appealed the decision of the DHO to the BOP North East Regional Office.  (Resp.'s Ex. 2.) He argued that he should have been charged with a Code 305 violation, because he had a Blue Tooth earpiece, not a cell phone. He also claimed he was treated differently than other inmates, in violation of Equal Protection, but provided no specifics. He did not assert that he was unaware of the increase in the severity level of discipline for being caught with a cell phone or related equipment. (Id.; Declaration of Tara Moran, ¶ 4.)  The Regional Director denied Petitioner's appeal because possession of a cell phone or related equipment is a significant security concern, and inmates received notice of the Code change in the inmate handbook. (Resp.'s Ex. 2.)

On or about January 17, 2010, Petitioner submitted an appeal to the Central Office. (Id.)  Petitioner again stated that he should have been charged with a Code 305, and that he was treated differently than other similarly situated inmates.  He argued that the charging officer must have had something against him, stating his belief that other inmates were charged with a Code 305 offense

4

for this type of act. He also argued that not charging him with a Code 305 offense was malicious prosecution, in violation of the APA. (Id.) The Central Office denied the appeal, agreeing with the determinations made by the Discipline Hearing Officer. (Id.)

On August 16, 2010, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. §2241. Petitioner argues: (1) the BOP violated the Due Process Clause by increasing the severity of the sanctions for possession of a Bluetooth cellular device without adequate notice; (2) the BOP's failure to abide by the APA when changing the rule regarding possession of a cell phone renders the rule unenforceable; (3) the rule prohibiting cell phones is void for vagueness; and (4) Petitioner has been treated differently than other similarly situated prisoners, which violates the Equal Protection Clause.

On October 7, 2010, Respondent filed her Answer to the Petition. (Docket Entry No. 5.) Respondent argues that: (1) the claims of lack of notice, violation of the APA, and that Code 108 is void for vagueness, must be dismissed because Petitioner has not properly exhausted his administrative remedies with respect to these issues; (2) the record contains some evidence that Petitioner committed the prohibited act of possessing a hazardous tool which is all that Due Process requires; (3) Petitioner had notice that possession of an electronic communication device or related equipment would be charged as a Code 108 prohibited act; (4)

Petitioner's void for vagueness argument lacks merit as there is no requirement that every disciplinary prohibited act be spelled out with exactness; (5) the Equal Protection claim is meritless; and (6) the BOP was not required to follow APA promulgation procedures in making cell phone or related equipment possession a Code 108 hazardous tool offense.

**II. DISCUSSION**

**A. Jurisdiction**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of good conduct time on federal grounds, and he was incarcerated in New Jersey at the time he filed the Petition. See

Woodall v. Fed. Bureau of Prisons, 432 F.3d at 242-44.

**B. Petitioner's Claims**

**1. Ground One**

In Ground One, Petitioner asserts that the BOP violated the Due Process Clause by increasing the severity of the sanctions for possession of a Bluetooth cellular device without adequate notice. Petitioner argues that at the time he was found to be in possession of a cell phone, said violation was classified as a violation of Code 305.  However, when Petitioner was charged, he was charged with a violation of Code 108, which is considered a severe level violation.  Petitioner argues that he received no notice of the change in severity level regarding possession of a cell phone.  In a certification filed with his Petition, Petitioner states that "the handbook for which [he] signed during intake did not identify 'possession of a cell phone' as a PAC 100 series offense." Respondent argues that the Petition must be denied on this ground for failure to exhaust administrative remedies and because Petitioner had notice of the change.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648

7

F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, at *2 (E.D.Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue relating

to any aspect of his/her own confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Discipline Hearing Officer (DHO) appeals, as in this matter, are submitted directly to the Regional Director. 28 C.F.R. § 542.14(d)(2). Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

Here, although Petitioner did appeal the sanctions imposed as a result of the DHO hearing, he did not assert the argument stated

in his first ground for relief; that he did not have notice of the severity level of the offense and this was a violation of his due process rights. Petitioner has not presented this Court with any attempt to justify his failure to exhaust his administrative remedies. Accordingly, the petition for a writ of habeas corpus would be dismissed on ground one for failure to exhaust administrative remedies alone.

The Court also finds that the petition would be denied on ground one for substantive reasons as well. Recently, in <u>Hudson v. Zickefoose</u>, 2010 WL 4746220, No. 10-251 (RBK) (D.N.J. November 15, 2010), the Court examined very similar issues to those presented in the instant case. In that case, the Court found that the inmate's petition was moot because he was given a rehearing on his Code 108 violation when it was discovered that his prior institution did not provide inmates with notice of the change from a Code 305 violation to a Code 108 violation for possession of a cell phone. <u>Id.</u> at *1. However, the Court also found that even if the petition had not been rendered moot, it would have been denied for substantive reasons. <u>Id.</u>

Citing <u>Pittman v. Zickefoose</u>, 10-5057 (RMB), the Court found that with regard to Petitioner's request for expungement, the Court of Appeals has expressed its doubts as to whether an expungement claim could be raised in a habeas action. <u>See</u> <u>Williams v. Fed. Bureau of Prisons</u>, 85 Fed. App'x 299 (3d Cir. 2004). In <u>Williams</u>,

the inmate filed a § 2241 habeas petition claiming that the BOP improperly refused to delete information contained in his prison file. See id. at 303. In response, the Court of Appeals observed:

> We have never had to decide whether to endorse the right of expungement announced in Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. [See] Johnson v. Rodriguez, 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997). Nevertheless, [the inmate in Williams] argues that his . . . prison file expungement claim are meritorious under Paine v. Baker. There, the Court of Appeals for the Fourth Circuit announced that, in limited circumstances, state prisoners have a federal due process right to have "prejudicial erroneous information expunged from their prison files." [Paine,] 595 F.2d at 202. The court held:
>
>> In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree.
>
> Id. at 201. [The inmate now] argues that he can assert Paine v. Baker expungement claims in a § 2241 habeas petition. Even if we assume arguendo that [the inmate] can assert a Paine v. Baker expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [where the information on file is factually correct].

Williams, 85 Fed. App'x at 303 (emphasis supplied).

Even if this Court were to assume, arguendo, that an expungement claim can be asserted in a § 2241 action, as the court in Williams did, this claim is facially without merit simply because Petitioner here concedes that he, in fact, committed the infraction reflected in his prison file and, hence, that information cannot be false.

11

The Court in Hudson and this Court in Pittman further found the BOP's decision to sanction Petitioner for his misconduct facially met due process requirements. When a disciplinary penalty affecting the length of a sentence is imposed, the Due Process Clause requires that "some evidence" be produced to support the decision to sanction. See Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to a federal prisoner's due process challenges). Since the "some evidence" standard requires only that the decision not be arbitrary or not without any support in the record, see, e.g., Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987); Hernandez-Zapata v. Schultz, 2011 WL 1326815, at *4-5 (D.N.J. April 04, 2011), and Petitioner here concedes that he, in fact, committed the very infraction for which he was sanctioned, the BOP's decision to impose a disciplinary penalty could not run afoul of the requirements posed by the Due Process Clause.

In the event Petitioner seeks to assert that he had due process rights to keep his good-conduct credit and be sanctioned by other means, that position is, too, without merit. Petitioner has no "pre-vested" liberty interest in any certain amount of good-conduct credit, see Barber v. Thomas, --- U.S. ----, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010); rather, he has to actually earn them. See 18 U.S.C. § 3624 (plainly stating that an inmate good time

12

credit must be earned); see also Sample v. Morrison, 406 F.3d 310 (5th Cir. 2005) (the statute grants the BOP the power to determine whether or not the inmate has complied with institutional disciplinary rules); accord Lynce v. Mathis, 519 U.S. 433, 445, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (the inquiry is limited to an inmate's eligibility for reduced imprisonment and does not envision any fixed guarantee of release).[2]

Petitioner's position is equally without merit as to his assertion that though he knew he was committing a disciplinary infraction, he thought he would suffer a different type of sanction than the sanction actually imposed and this violates his due process rights. While Petitioner has due process rights to notice as to general categories of the acts prohibited, he has no due process right to notice as to any specific administrative sanction he might face if his violation gets detected. See, e.g., Adams v. Gunnell, 729 F.2d 362, 368-70 (5th Cir. 1984) (a prisoner's right to notice means that the rules must give a person of ordinary intelligence notice of the actions prohibited); accord Cook v. Warden, 241 Fed. App'x 828, 2007 U.S. App. LEXIS 14772 (3d Cir.)

---

[2] Since inmates possess a liberty interest in having their good-conduct credit vested if such credit is earned, see Wolff v. McDonnell, 418 U.S. 539, 555-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Levi v. Holt, 192 Fed.Appx. 158 (3d Cir. 2006), due process requires, if a disciplinary hearing resulted in loss of good-conduct credit: (a) 24 hours advance written notice of the disciplinary charges; (b) an opportunity to testify, call witnesses and present documentary evidence; and (c) a written statement by the fact-finder as to the evidence relied upon and reasons for the disciplinary action. See Wolff, 418 U.S. at 564-566. However, since the details of Petitioner's administrative hearing were not challenged in the Petition, the Court need not construe the Petition as raising any Wolff-related aspects.

(per curiam) (dismissing the inmate's § 2241 challenges to vagueness of a BOP's Code and finding that the notice was sufficient where the inmate was provided with a prison handbook informing him of the categories of acts proscribed, even though different prison handbooks detailed the proscribed activities with different degree of particularity), cert. denied 552 U.S. 1051 (2007); Cotten v. Ward, 190 Fed. App'x 701, 702 (10th Cir. 2006) (affirming dismissal of § 2241 challenges where the prison rule was "sufficiently clear and unambiguous to provide fair notice to inmates of what conduct [was] prohibited"); see also Eason v. Owen, 2010 WL 3192932 (D.S.C. Apr. 30, 2010) (dismissing an inmate's § 2241 challenges asserting that possession of a cell phone should be deemed a "lesser included offense" of Code 108 and, thus, subjected to a lesser sanction under another BOP Code).

    Here, as in Hudson and Pittman, Petitioner concedes that at all pertinent times he was on notice that possession of a cell phone was a proscribed offense and, importantly, a sanctionable misconduct. (Pet.'s Br. at 13.) In addition, Petitioner concedes that, at all pertinent times, he was aware of the exact language of Code 108, which prohibits "[p]ossession . . . of a hazardous tool [i.e., the] tools most likely to be used in an escape or escape attempt." (Id. at 14.) Consequently, Petitioner was put on notice, by the very language of Code 108, that Code 108 sanctions could be applied to him for the misconduct of possession of a

14

hazardous tool in the form of a cell phone. See Robinson v. Warden, 250 Fed. App'x 462 (3d Cir. 2007) (per curiam) (rejecting the inmate's argument that Code 108 was too vague for the purposes of providing notice of the Code's applicability to cell phone infractions). Petitioner's allegations to that effect will, therefore, be denied.

**2. Ground Two**

In his second ground for relief, Petitioner argues that changes to the BOP rules must be done using the process identified by the APA and where there is a failure to do so, the BOP is precluded from enforcing the proposed rule. Petitioner argues that the language of Code 108 when he was charged with its violation did not specifically identify a cellular phone as a "hazardous tool", but a later proposed version of the rule included "electronic communications device" in the description of "hazardous tool." Petitioner argues that this is evidence that the BOP knew that a violation of Code 108 was not the proper code violation to be charged when a prisoner was found with a cellular phone.

As stated above with regard to Ground One, although Petitioner did appeal the sanctions imposed as a result of the DHO hearing, he did not assert the argument stated in his second ground for relief; that the rule change violated the APA and is therefore void. Petitioner has not presented this Court with any attempt to justify his failure to exhaust his administrative remedies. Accordingly,

15

the petition for a writ of habeas corpus would be dismissed on Ground Two for failure to exhaust administrative remedies alone.

The petition would also be denied on Ground Two for substantive reasons. As also discussed by this Court in Pittman and the Court in Hudson, "BOP's internal agency guideline[s]" are not subject to the notice and comment requirements of the APA. See Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); see also Royal v. Tombone, 141 F.3d 596, 600 (5th Cir. 1998) (rejecting prisoner's argument that BOP's change in policy was invalid because it was not promulgated in accordance with the APA, as agency guidelines are "promulgated internally and may be altered at will by the BOP"); Koray v. Sizer, 21 F.3d 558, 562 (3d Cir.1994) (internal agency guidelines may be altered by the BOP at will and are not subject to the notice and comment requirements of the APA), rev'd on other grounds sub nom Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). As such, Petitioner's argument to the contrary has no merit.

### 3. Ground Three

In his third ground for relief, Petitioner argues that the rule prohibiting cell phones, Code 108, is void for vagueness.

As stated above with regard to Grounds One and Two, although Petitioner did appeal the sanctions imposed as a result of the DHO hearing, he did not assert the argument stated in his third ground for relief; that Code 108 should be voided for vagueness.

Petitioner has not presented this Court with any attempt to justify his failure to exhaust his administrative remedies. Accordingly, the petition for a writ of habeas corpus would be dismissed on Ground Three for failure to exhaust administrative remedies alone.

Further, the petition would also be denied on Ground Three for substantive reasons. In fact, the Third Circuit has specifically rejected the argument that Code 108 is void for vagueness, and that a cell phone is not a hazardous tool, stating that

> [a] statute or regulation must fail for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Prohibited acts under BOP regulations include Code 108, entitled "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R § 541.13, Table 3. Code 108 is not unconstitutionally vague on its face...The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations, see Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 389 (3d Cir. 2001)...

Robinson v. Warden, 250 Fed.Appx. 462, 464 (3d Cir. 2007). Therefore, the petition would also be denied on Ground Three for substantive reasons.

**4. Ground Four**

In his fourth ground for relief, Petitioner argues that the BOP has treated him differently than other similarly situated inmates and this is a violation of the Equal Protection Clause.

17

Specifically, Petitioner alleges that prison officials choose between inmates found to be in possession of cellular phones and randomly charge those inmates with different code violations, ranging from 305, 108 and 199. Petitioner alleges that these choices are not made pursuant to any definable guidelines but are at the sole discretion of the staff member and the decision can be affected by the staff member's personal feelings.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and

18

ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination"). Thus, although lawful imprisonment entails the necessary withdrawal or limitation of many rights and privileges, see Pell v. Procunier, 417 U.S. 817, 822 (1974), inmates have a constitutional right to be free from discrimination based on race and other "suspect classifications," such as alienage or country of origin. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir.2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir.1980).

Here, Petitioner has not made any allegations that he is part of a suspect class. Rather, he generally alleges that prison staff are making disciplinary decisions based on their personal feelings towards individual inmates. A party alleging an equal protection violation has the burden of proving the existence of purposeful discrimination. Barney v. Camden County Bd. of Chosen Freeholders, 2009 WL 5103206, at *9 (D.N.J. December 17, 2009)(citing McClesky v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Petitioner fails to do so. In fact, by his own words, "they [the prison staff] chose between various inmates found to be in possession of [sic] phone and randomly charge different PAC offenses, 305, 108, 199." (Pet.'s Br. at 21.) Further, though he points to two other cases where inmates had their initial Code 108 charges reduced because they did not have notice of the prison rule change, Petitioner has not established that these other inmates

19

were "similarly situated." Specifically, Petitioner has not alleged, and it does not appear to the Court, that the other two inmates were confined at FCI McKean at the time of their infractions. Therefore, Petitioner has not met his burden and the petition will be denied on Ground Four.

### III. Conclusion

For the above reasons, the Petition for a Writ of Habeas Corpus will be denied. An appropriate Order will be issued.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: May 3, 2011